FILED
IN CLERK'S OFFICE
U.S. District Court
For the District of Massachusetts
2024 MAY 23 PM 12: 14

U.S. DISTRICT COURT
DISTRICT OF MASS.

1:23-cv-12835
(DJC)

James M Driscoll II (plaintiff)

v.

Robert Leaf (defendant)

## Motion to Intervene

Michael[1] motions the Court for permissive intervention as a plaintiff under Rule 24(b).[2] Michael has agreed the parties need not respond until resolution of the June 26 hearing.

### I. The Court Should Allow Intervention for Judicial Economy.

"On timely motion, the court may permit anyone to intervene who … has a claim or defense that shares with the main action a common question of law or fact."[3] The inquiry is made under the totality of the circumstances including: (1) the length of time the applicant knew or should have known of his interest before moving to intervene; (2) prejudice to existing parties due to the applicant's delay; (3) prejudice to the applicant if intervention is denied; and (4) any "unusual circumstances" militating for or against intervention.[4] The factors are related and, indeed, co-dependent variables of analysis.[5] In deciding permissive intervention, "the district court can consider almost any factor rationally relevant but enjoys very broad discretion in

---

[1] As the parties refer to the Movant as "Michael," this motion does the same (vs. "J. Driscoll.")

[2] A proposed Complaint is attached as Exhibit A.

[3] Fed R Civ P 24(b)(1)(B) (permissive intervention).

[4] Caterino v. Barry, 922 F.2d 37, 40 (1st Cir. 1990) (all factors should be fully considered); see Fed R Civ P 24(b)(3) (delay and prejudice). "Unusual circumstances" are not well-defined, and probably collapse into the Court's broad discretion to consider 'almost anything relevant.' At least one District Court has found avoiding inconsistent judgements an "unusual circumstance" weighing in favor of intervention. See Sparks v. Fitzhugh, 2023 U.S. Dist. LEXIS 91192, *14 (N.D. Ohio 2023). The Fifth Circuit has treated the "unusual circumstances" prong as an almost affirmative defense of the putative intervenor to defeat factors militating against intervention. See Stallworth v. Monsanto Co., 558 F.2d 257, 266 (5th Cir. 1977).

[5] See Id. at 41-42; 6 Moore's Federal Practice - Civil § 24.21 (2024) ("The mere passage of time in itself, does not render a motion untimely; rather, the focus should be on actual proceedings of substance on the merits.").

granting or denying the motion."[6]

"[A] district court mulling permissive intervention is free to consider whether the applicants may be helpful in fully developing the case."[7] All of Michael's claims constitute continuing wrongs, which conduct against Michael largely continues to the present[8] and largely duplicate J. Driscoll's claims, tending toward judicial efficiency of resolution in one proceeding.

### A. *Michael's Claims are Almost Factually Identical to J. Driscoll's*

Michael's claims concern the Offer to Purchase and abusive litigation—both in Driscoll's complaint. Most importantly, Michael's claims arise out of the same course of conduct by Leaf as spelled-out in Driscoll's complaint. To make the point clear, Leaf and two of his attorneys[9] committed an ongoing course of conduct against J. Driscoll and Michael, largely conducted through abusive litigation concerning the Offer, supplemented with additional torts.[10]

### B. *The Existing Parties are not Prejudiced because Michael's Intervention is Designed to Reduce the Expense, Complexity, and Duration of the Litigation to All.*

Timeliness should be analyzed as a form of laches or estoppel.[11] "As such, timeliness should not prevent intervention where an existing party induces the applicant to refrain from intervening."[12] "The requirement of timeliness is not a tool of retribution to punish the tardy would-be intervenor, but rather a guard against prejudicing the original parties by the failure to

---

[6] Daggett v. Comm'n on Gov. Ethics & Election Practices, 172 F.3d 104, 113 (1st Cir. 1999).
[7] T-Mobile Northeast LLC v. Town of Barnstable, 969 F.3d 33, 41 (1st Cir. 2020) (quotations/citations omitted).
[8] If anything, Michael concedes his claims may not yet be ripe as they concern ongoing injuries.
[9] **Driscoll clarifies that nothing in the complaint refers to Leaf's Counsel in this case.**
[10] Michael does not seek damages for the nexus of 'the Nov. 30 trespassing incident' in J. Driscoll's complaint as, regarding Michael, it is res judicata and prohibited by claim splitting.
[11] United States v. Alcan Aluminum, 25 F.3d 1174, 1182 (3rd Cir. 1994).
[12] Id.

apply sooner."[13] This case is in the pleading stage.

Michael concedes the prejudice to him from denial of intervention is small: he will simply bring the claims in a separate docket. But this goes to the crux of the issue from Leaf's perspective: if Michael's intervention is denied, Leaf will face two cases and two trials over virtually identical issue—a sort of inverse 'second bite at the apple' in the form of the specter of two opportunities to face full liability for the exact same events.[14] A second verdict (finding Leaf liable to Michael) could effectively nullify the first (finding Leaf not liable to J. Driscoll), despite nearly the exact same disputed facts. Denial of intervention will almost inarguably harm Leaf. Discovery on Michael's complaint will be quite limited: Driscoll already possesses most relevant information. Discovery will largely be taken *from* Michael, *by* Leaf.

Intervention of right's "common interest" framework is instructive, albeit not directly applicable. "[I]n the intervention area the 'interest' test is primarily a practical guide to disposing of lawsuits by involving as many apparently concerned persons as is compatible with efficiency and due process."[15] "What is important is whether the intervenor has a stake in the matter that goes beyond a generalized preference that the case come out a certain way, as when the party seeks to intervene solely for ideological, economic, or precedential reasons."[16] For the reasons stated above, this analysis supports granting permissive intervention.

## Conclusion

Michael requests the Court allow him to intervene in this case as a Plaintiff against Leaf.
**[signature page to follow]**

---

[13] See Sierra Club v. Espy, 18 F.3d 1202, 1205 (5th Cir. 1994).

[14] As one illuminating example, both Michael and J. Driscoll seek the value of maintaining Driscoll Way, which they co-own. Separate trials could produce the bizarre result where Leaf owes Michael for the first 2/3 of the way, but not J. Driscoll for the latter third, despite the contract at-issue making no distinction between these segments.

[15] Nuesse v. Camp, 385 F.2d 694, 700 (D.C. Cir. 1967).

[16] DeOtte v. Nevada, 20 F.4th 1055, 1068 (5th Cir. 2021) (quotations/citations omitted).

Respectfully Submitted May 23, 2024,

/s/ Michael Driscoll
P.O. Box 2713
Nantucket, MA 02584
774-271-1119
mdriscoll6212@yahoo.com

## Local Rule 7.1(a)(2) Certificate

I hereby certify that on May 22, 2024, I conferred with Leaf's Counsel and James Driscoll. We were unable to narrow the issues presented.

/s/ Michael Driscoll

## Certificate of Service

I hereby certify that, on May 23, 2024, I served a true copy of the foregoing Motion to Intervene and Complaint on Leaf's Counsel and on J. Driscoll via USPS First Class Mail and email.

/s/ Michael Driscoll

# Exhibit A

JS 44   (Rev. 10/20)   **CIVIL COVER SHEET**

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet.   *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS
Michael Driscoll

**DEFENDANTS**
Robert Leaf

(b) County of Residence of First Listed Plaintiff   Nantucket, MA
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant   Palm Beach, FL
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

(c) Attorneys *(Firm Name, Address, and Telephone Number)*

Attorneys *(If Known)*
Matthew Ezepek

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- [ ] 1 U.S. Government Plaintiff
- [ ] 2 U.S. Government Defendant
- [ ] 3 Federal Question (U.S. Government Not a Party)
- [X] 4 Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)* (For Diversity Cases Only)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | [ ] 1 | [ ] 1 | Incorporated *or* Principal Place of Business In This State | [ ] 4 | [ ] 4 |
| Citizen of Another State | [ ] 2 | [X] 2 | Incorporated *and* Principal Place of Business In Another State | [ ] 5 | [ ] 5 |
| Citizen or Subject of a Foreign Country | [ ] 3 | [ ] 3 | Foreign Nation | [ ] 6 | [ ] 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| 110 Insurance | **PERSONAL INJURY** / **PERSONAL INJURY** | 625 Drug Related Seizure of Property 21 USC 881 | 422 Appeal 28 USC 158 | 375 False Claims Act |
| 120 Marine | 310 Airplane / 365 Personal Injury - Product Liability | 690 Other | 423 Withdrawal 28 USC 157 | 376 Qui Tam (31 USC 3729(a)) |
| 130 Miller Act | 315 Airplane Product Liability / 367 Health Care/ Pharmaceutical Personal Injury Product Liability | | **PROPERTY RIGHTS** | 400 State Reapportionment |
| 140 Negotiable Instrument | 320 Assault, Libel & Slander | | 820 Copyrights | 410 Antitrust |
| 150 Recovery of Overpayment & Enforcement of Judgment | 330 Federal Employers' Liability / 368 Asbestos Personal Injury Product Liability | | 830 Patent | 430 Banks and Banking |
| 151 Medicare Act | 340 Marine | | 835 Patent - Abbreviated New Drug Application | 450 Commerce |
| 152 Recovery of Defaulted Student Loans (Excludes Veterans) | 345 Marine Product Liability | | 840 Trademark | 460 Deportation |
| 153 Recovery of Overpayment of Veteran's Benefits | 350 Motor Vehicle / **PERSONAL PROPERTY** 370 Other Fraud | **LABOR** | 880 Defend Trade Secrets Act of 2016 | 470 Racketeer Influenced and Corrupt Organizations |
| 160 Stockholders' Suits | 355 Motor Vehicle Product Liability / 371 Truth in Lending | 710 Fair Labor Standards Act | | 480 Consumer Credit (15 USC 1681 or 1692) |
| 190 Other Contract | [X] 360 Other Personal Injury / 380 Other Personal Property Damage | 720 Labor/Management Relations | **SOCIAL SECURITY** | 485 Telephone Consumer Protection Act |
| 195 Contract Product Liability | 362 Personal Injury - Medical Malpractice / 385 Property Damage Product Liability | 740 Railway Labor Act | 861 HIA (1395ff) | 490 Cable/Sat TV |
| 196 Franchise | | 751 Family and Medical Leave Act | 862 Black Lung (923) | 850 Securities/Commodities/ Exchange |
| **REAL PROPERTY** | **CIVIL RIGHTS** / **PRISONER PETITIONS** | 790 Other Labor Litigation | 863 DIWC/DIWW (405(g)) | 890 Other Statutory Actions |
| 210 Land Condemnation | 440 Other Civil Rights / **Habeas Corpus:** | 791 Employee Retirement Income Security Act | 864 SSID Title XVI | 891 Agricultural Acts |
| 220 Foreclosure | 441 Voting / 463 Alien Detainee | | 865 RSI (405(g)) | 893 Environmental Matters |
| 230 Rent Lease & Ejectment | 442 Employment / 510 Motions to Vacate Sentence | | **FEDERAL TAX SUITS** | 895 Freedom of Information Act |
| 240 Torts to Land | 443 Housing/ Accommodations / 530 General | | 870 Taxes (U.S. Plaintiff or Defendant) | 896 Arbitration |
| 245 Tort Product Liability | 445 Amer. w/Disabilities - Employment / 535 Death Penalty | **IMMIGRATION** | 871 IRS—Third Party 26 USC 7609 | 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| 290 All Other Real Property | 446 Amer. w/Disabilities - Other / **Other:** 540 Mandamus & Other | 462 Naturalization Application | | 950 Constitutionality of State Statutes |
| | 448 Education / 550 Civil Rights | 465 Other Immigration Actions | | |
| | 555 Prison Condition | | | |
| | 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

- [X] 1 Original Proceeding
- [ ] 2 Removed from State Court
- [ ] 3 Remanded from Appellate Court
- [ ] 4 Reinstated or Reopened
- [ ] 5 Transferred from Another District *(specify)*
- [ ] 6 Multidistrict Litigation - Transfer
- [ ] 8 Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*: 18 U.S.C. 1961

Brief description of cause:
Abuse of Process, Malicious Prosecution, Extortion, Breach

## VII. REQUESTED IN COMPLAINT:
- [ ] CHECK IF THIS IS A **CLASS ACTION** UNDER RULE 23, F.R.Cv.P.

DEMAND $ unknowable

CHECK YES only if demanded in complaint:
JURY DEMAND: [X] Yes [ ] No

## VIII. RELATED CASE(S) IF ANY
*(See instructions):*
JUDGE _____   DOCKET NUMBER _____

DATE _____   SIGNATURE OF ATTORNEY OF RECORD _____

**FOR OFFICE USE ONLY**

RECEIPT # _____   AMOUNT _____   APPLYING IFP _____   JUDGE _____   MAG. JUDGE _____

U.S. District Court
For the District of Massachusetts

1:23-cv-12835 (DJC)

James M Driscoll II, *et al* (plaintiffs)

v.

Robert Leaf (defendant)

**CIVIL COMPLAINT**

Parties

1. Michael Driscoll (hereafter: Driscoll) is a natural person residing in Massachusetts.

2. Robert Leaf (hereafter: Leaf) is a natural person residing in Florida.

Jurisdiction & Venue

3. Jurisdiction is proper under 28 U.S.C. § 1332 (a)(1).

4. Venue is proper under 28 U.S.C. § 1391 (b)(2) & 28 U.S.C. 1331.

Facts

5. At all relevant times, Driscoll owns 100% 2 Driscoll Way as Trustee, and 20% of 6 Driscoll Way in his personal capacity.

6. In October 2020, Leaf drafted an Offer to Purchase real estate, through which he intended to acquire the fee in 10 Driscoll Way, a deed restriction on 6 Driscoll Way, and other recordable rights in 2 Driscoll Way.

7. After signing, Leaf discovered he accidentally drafted a contract that did not provide him any rights in Driscoll's properties.

8. At all relevant times, Leaf had full knowledge that he has no colorable right to Driscoll's property.

9. Later, Leaf promised to sue Driscoll if he would not gift rights in 2 and 6 Driscoll Way to Leaf, including while illegally trespassing at Driscoll's home and assaulting his father.

10. Leaf filed suit against James Driscoll seeking conveyance of 10 Driscoll Way, but

1

requested no rights in Michael's properties, because Leaf knew he had no colorable right to Driscoll's properties (hereafter: "Nantucket Litigation.").

11. Outside of court, Leaf then demanded Driscoll convey 2 and 6 Driscoll Way to Leaf.

12. Driscoll refused.

13. Leaf offered Driscoll $50,000.00 to sign documents that he drafted conveying rights in both 2 and 6 Driscoll Way.

14. Driscoll refused.

15. Leaf threatened to sue Driscoll if he did not gift his land to Leaf.

16. Driscoll refused.

17. On May 26, 2021, Driscoll was served with a lawsuit against him by Leaf brought on the strength of the assertion Leaf reasonably believed Driscoll had agreed to convey to Leaf.

18. Leaf's Counsel swore under oath there was a good legal and factual basis for these assertions to hide the fact Leaf knew his claims against Driscoll were baseless.

19. Leaf told Driscoll the Offer to Purchase required Driscoll to convey rights in 2 and 6 Driscoll Way to Leaf.

20. Leaf told Driscoll that he was a beneficiary of the Offer to Purchase under which Leaf was contractually obligated to pay to maintain Driscoll Way for Driscoll's benefit.

21. Leaf stated he believed James Driscoll signed the Offer to Purchase as Driscoll's agent, for Driscoll's benefit.

22. Leaf told Driscoll the Offer to Purchase was drafted so as to require Driscoll to convey 2 and 6 Driscoll Way to Leaf.

23. Leaf told Driscoll he had instructed his real estate agent to include a deed restriction on 6 Driscoll Way in the Offer to Purchase

24. On or around September 27, 2021, Leaf and Driscoll spoke via telephone while Driscoll

was in the District of Columbia, and Leaf was in Florida.

25. Leaf told Driscoll he still wanted a deed restriction on 6 Driscoll Way and asked Driscoll to sign one.

26. Driscoll refused.

27. Leaf told Driscoll he would kill him with legal fees if Driscoll defended against his claims and thus Driscoll would ultimately give him a restriction either way.

28. Driscoll announced that he was a law student.

29. Driscoll told Leaf he never agreed to give him rights in his properties.

30. Leaf told Driscoll he would get his land whether the court gave it to him or not.

31. Leaf threatened to ruin Driscoll's legal career if he ever challenged Leaf in Court.

32. Leaf told Driscoll he knew people who could get Driscoll's land for him outside of court.

33. Leaf told Driscoll his lawyers were working too slowly, and that Leaf would have to resort to other means, outside of court, to get Driscoll's land.

34. Leaf reminded Driscoll he knows where his entire family lives.

35. The following morning, just hours before a hearing on Driscoll's motion to dismiss Leaf's claim for restrictions, Leaf sent individuals to Driscoll's house to harass and intimidate his mother.

36. Leaf has promised to falsely accuse Driscoll of crimes to ruin his legal career.

37. Leaf's attorney has threatened to follow Driscoll wherever he goes in the United States to ruin his legal career.

38. In retaliation for defending against Leaf's lawsuit against Driscoll, Leaf and his attorneys have called Driscoll's law school to make knowingly false accusations of misconduct against Driscoll in attempt to have Driscoll expelled and have, as recently as May 2024, threatened to continue doing so.

39. On November 18, 2021, Leaf's action against Driscoll was dismissed in Driscoll's favor.

40. Leaf admits the contract he sued Driscoll to enforce against Driscoll was voided prior to filing suit, and that Leaf knew it in no way implicated Driscoll or his property. Leaf actively concealed this fact until January 2023 by repeatedly asserting the opposite.

41. Leaf forged evidence and committed perjury to advance his claims against Driscoll because he knew he had no colorable claim against Driscoll.

42. Leaf and his attorneys always insisted they had a good faith belief in Leaf's claims against Driscoll before announcing, for the first time, on or around January 24, 2023 that they never held any belief whatsoever that Driscoll or his property were implicated by the contract.

43. At the height of Leaf's threats and extortion against Driscoll, Driscoll had to seek medical services from a hospital for a cardiac injury caused by Leaf's ongoing emotional intimidation, threats, and harassment against Driscoll and his family members.

44. In or around May 2024, Driscoll was later retreated for cardiac distress caused, again, by Leaf's and his attorneys ongoing extortion.

45. Driscoll has suffered permanent physical damage as a direct and proximate result of Leaf's actions.

46. In addition to stress, fear, insomnia, and humiliation, Driscoll continues intermittently experiencing chest pain and shortness of breath to this day, despite never having done so before meeting Leaf.

47. Driscoll has had to forego many volunteering opportunities in order to defend against Leaf's extortion, which was all done to pressure Driscoll into conveying his land to Leaf.

48. Driscoll had to routinely skip law school classes to attend court hearings against Leaf and

4

missed further classes and extracurricular activities because doctors instructed Driscoll to bedrest due to the cardiac injury suffered as a result of Leaf's extortion.

49. Driscoll expended thousands of dollars in court costs as a result of Leaf's admittedly frivolous action against him.

50. Driscoll had to turn down a seat on law review at Georgetown University Law Center as a direct and proximate result of Leaf's extortion aimed at intimidating Driscoll into conveying his land to Leaf.

51. Driscoll can no longer invite his friends over to his house because of their fear of Leaf.

52. Driscoll has not brought these claims sooner because of his very reasonable fear Leaf would honor his promise to continue committing unlawful acts against Driscoll if he did so.

53. Leaf and his attorneys have reported derogatory information about Driscoll to the Bar Association several times, including in June of 2023, when Driscoll was not even an attorney, after Leaf threatened to ruin Michael's legal career if he would not gift his land to Leaf.

54. Leaf and his Attorneys continue intermittently making these threats to the present day.

55. Leaf has previously threatened that he will sue Driscoll forever, in his capacity as Driscoll's neighbor, if Driscoll does not give Leaf rights in his land.

56. Leaf has promised to create property disputes with Driscoll, as his neighbor, in order to continue punishing Driscoll for refusing to gift his land to Leaf.

57. Leaf is not presently Driscoll's neighbor, and never had been, but continues intimidating Driscoll with threats that Leaf will become Driscoll's neighbor, including in person in or around January 2023.

58. Driscoll has suffered estrangement from both his parents because Leaf has physically threatened both of them under the strength of the assertion he was doing so to convince

Michael to convey his property to Leaf.

59. Driscoll has lived for several years under constant fear—often vindicated—that Leaf would ruin Driscoll's life if he did not give Leaf his property.

60. Driscoll has suffered severe emotional distress manifesting as physical injury as a direct and proximate result of Leaf's extortion against him.

61. Leaf threatened to sue Michael before actually doing so in order to scare him into signing the deed restrictions Leaf demanded.

62. In or around August 2023, Driscoll sent Leaf a letter of demand requesting Leaf perform the Offer to Purchase according to its terms.

63. Weeks later, Leaf replied to that letter denying, for the first time, the existence of any obligations to Driscoll under the Offer.

64. The enterprise between Leaf and his associates and its goals as alleged herein continues operating to the present day and will likely do so into the future.

65. In or around January 2022, Driscoll conferred with Counsel for Leaf and Counsel for James Driscoll.

66. The parties agreed James Driscoll would sell 10 Driscoll Way to Webster, and that Webster would assume Leaf's obligations to Driscoll in the Addendum, including the duty to maintain and re-gravel Driscoll Way.

67. In or around March 2022, Driscoll and Leaf reincorporated these prior terms and further agreed neither would bring any new claims against the other until the Nantucket Litigation between Leaf and James Driscoll concluded.

68. The parties agreed that procedural issues and appeals within the Nantucket Litigation could be prosecuted against each other, but that no not-then-existing claims would be brought by one against the other until the conclusion of the Nantucket Litigation.

69. Leaf warranted to Driscoll that the Nantucket Litigation would be fully concluded by the end of 2022, and further promised that Leaf would not be assuming ownership of 10 Driscoll Way, since he sold all his rights to Webster.
70. Driscoll and Leaf agreed to these terms on or around March 31, 2022.
71. On April 1, 2022, Driscoll voluntary dismissed his counterclaims per the settlement agreement.
72. Unknown to Driscoll, Leaf and his Counsel has already begun intentionally stalling those proceedings beginning a month prior.
73. Driscoll did not learn of Leaf's causing delay until 2023.
74. Because of Leaf's repeated and willful delay of the Nantucket Litigation, that Litigation has not yet concluded.
75. The impending running of the statute of limitations for some of the claims Driscoll promised not to bring against Leaf until the conclusion of the Nantucket litigation would substantially frustrate Driscoll in a way not foreseeable at the time of formation.
76. The parties entered the settlement agreement upon the mutual mistake that the Nantucket litigation would conclude by the end of the year.
77. Leaf intentionally represented to Driscoll that he would expedite a resolution to the Nantucket Litigation when he, in fact, knowingly had already begun preventing the same.
78. But for these representations, Driscoll would not have entered the settlement agreement in which he agreed not to bring these claims against Leaf until the conclusion of the Nantucket Litigation.
79. Leaf stalled the Nantucket Litigation to personally enrich himself.
80. In July 2022, Leaf's Counsel, located in Massachusetts, communicated with Michael, located in Rhode Island, via telephone and email, insisting Michael was again a party to the

7

Nantucket Litigation.

81. Leaf insisted these communications constituted service within the Nantucket Litigation, and were thus in accordance with the parties' settlement agreement.

82. In response, Driscoll, on or around October 25, 2022, attempted to reopen the docket of the Nantucket Litigation to requests costs and attorney's fees pursuant to G.L. 231, § 6F, so as not to violate the settlement agreement.

83. Driscoll amended that claim to include a count for fraud on the court which stood in his way to collecting costs and fees under 231 §6F, on or around January 6, 2023.

84. That case and its lone claim remain pending and do not violate the Settlement Agreement.

85. Leaf has performed all actions complained of herein upon the urging, or with the assistance, of his attorneys.

86. At all times prior to filing this complaint, Driscoll has remained ready, willing, and able to perform under the terms of the Settlement Agreement and has communicated that to Leaf.

## PRAYER FOR RELIEF

A. Award Driscoll damages.

B. Award Driscoll statutory costs and fees in this litigation.

C. Enjoin enforcement of the final judgement obtained in Nantucket Superior Court Docket # 2075CV00035 because it was obtained in violation of federal law and threatens to encourage and assist future violations of federal law.

D. Award any other relief as the Court finds appropriate in the interests of justice.

## JURY DEMAND

I. Driscoll demands adjudication by jury on all issues so triable.

/s/ Michael Driscoll
May 23, 2024