## **Affidavit of Michael Driscoll**

1. I am a natural person residing in Massachusetts.

2. I make these statements upon my own personal knowledge.

3. Before I was sued by Leaf in May of 2021, Leaf demanded I sign a road maintenance agreement (for 2 and 6 Driscoll Way) and restrictive covenant (on 6 Driscoll Way) that he drafted. See Exhibit 5.

4. On or around June 10, 2021, I filed a counterclaim against Leaf for Abuse of Process. See Exhibit 1.

5. On or around June 18, 2021, I spoke to Leaf's litigation Counsel, Joel Quick, via telephone. See Exhibit 2.

6. Leaf's Counsel forewarned me of additional legal action against me if I did not withdraw the Abuse of Process Claim.

7. I told Leaf's Counsel I would bring the claim later after I defeated Leaf's claims and agreed to withdraw the abuse of process claim.

8. On or around June 21, 2021, I voluntarily amended my complaint, before any responsive filing, to remove the Abuse of Process Claim.

9. On or around July 1, 2021, I spoke to Leaf's Counsel again. See Exhibit 2.

10. Counsel confirmed to me that I was an intended beneficiary of the Addendum and that, through items 7-10, Leaf was contractually obligated to me to maintain the entirety of Driscoll Way at Leaf's sole expense forever.

11. Counsel further told me that, under the Addendum, I was further required to sign a restrictive covenant on my property, 6 Driscoll Way, over to Leaf.

12. I refused to sign any restriction and denied that I was obligated to do so.

1

13. About two weeks later, I received an email from Leaf's Counsel again seeking to settle the case. See Exhibit 2.

14. I refused.

15. On or around September 27, 2022, I spoke to Robert Leaf.

16. He asked me to sign a deed restriction.

17. I refused.

18. Leaf told me he was contractually obligated under the Addendum to pay to maintain Driscoll Way at his expense, for my benefit and asked if I would settle my claims against him in exchange for his maintaining my driveway as I described in the Addendum.

19. I refused.

20. On or around Jan. 25, 2022, I spoke to Leaf's Counsel and James Driscoll's Counsel together. See Exhibit 2.

21. Leaf's Counsel and James Driscoll's Counsel told me David Webster would be buying the land at-issue (10 Driscoll Way), thus assuming the contractual obligation of maintaining my road.

22. I demanded a portion of the money from Webster to settle my claims.

23. Leaf's Counsel refused, insisting I was still winning by having the contract honored via the paragraphs 7-10 requiring Leaf to maintain Driscoll Way.

24. Leaf's Counsel assured me David Webster would assume Leaf's then-existing obligation to maintain the way and further insisted, if the Assignment in any way failed, Leaf would maintain his obligations to pay to maintain Driscoll Way, as in the Addendum.

25. Leaf's Counsel stated Leaf would sign the Road Maintenance agreement before the conclusion of the Leaf v. J. Driscoll litigation if I dismissed my pending claims. See Exhibit 5.

26. That agreement states Leaf will pay to maintain the entirety of Driscoll Way (across 2 & 6 Driscoll Way). See Exhibit 5.

27. In exchange for warranting performance of the Addendum, Leaf's Counsel demanded I release my counterclaims.

28. Leaf's Counsel further warranted to me that Leaf would not be buying 10 Driscoll Way, would not be my neighbor, and that the litigation would be fully resolved by the end of the calendar year, if not sooner.

29. This was the same guarantee Leaf's Counsel had made to me in November 2021, when he made a very similar settlement offer.

30. I refused to agree to the Assignment, at which point Leaf and Driscoll's Counsel said it did not matter, as I was only a beneficiary of the Addendum, and not an obligee, so they did not need my consent to close the deal with Webster.

31. I stated I had additional, new claims, in addition to the previously dismissed abuse of process claim, that I was going to bring against Leaf.

32. I asked Leaf's Counsel if Leaf would agree to cease contacting me if I accepted the settlement.

33. Leaf's Counsel agreed.

34. I left the settlement discussion stating I would not agree to anything at that time.

35. Leaf's Counsel stated that his offer would remain open, and I could call back and accept at any time.

36. The very next day, I listened, with my own ears, as Leaf's Counsel represented to the Superior Court in the Nantucket Litigation, that certain terms in the Addendum "were still live," exactly as he warranted to me the day prior when making a firm offer to me. See Exhibit 8.

37. Leaf later motioned to dismiss my counterclaims.

38. Per Superior Court rules, I spoke to Leaf's Counsel and stated that, in response I would be amending my complaint to cure any infirmities, and more importantly, to add the abuse of process claim I amended away in June of 2021.

39. Leaf's Counsel then reminded me of Leaf's outstanding settlement offer, reiterated that everything offered still stood, and renewed the offer adding a new request that I agree not to bring any of these new claims I proposed until the conclusion of the Nantucket Litigation between Leaf and James Driscoll, so that my claims against Leaf would not interfere with or delay Leaf's attempts to conclude his case against James Driscoll.

40. That offer was again indefinitely left open for acceptance.

41. I told Leaf's Counsel I would think about it and get back to him.

42. Shortly thereafter, on or around March 16, 2022, I contacted Leaf's Counsel to accept the open settlement proposal he had extended to me several times.

43. My obligation was to not bring the claims I have now brought in federal court against Leaf until the litigation between Leaf and James Driscoll reached final judgement.

44. We further agreed that an appeal I had pending in the Nantucket Litigation would be excepted, as well as anything relating to Leaf's claims as Plaintiff, including James Driscoll's motion arguing I was a necessary defendant under Rule 19, which I interpreted as allowing me to bring a motion for costs under G.L. 231 §6F as defendant.

45. We agreed that a writing was not needed, since Leaf's obligations were contained in the Addendum signed by Leaf, which would serve as our memorandum of Leaf's obligations.

46. In response to Leaf's demanding I wait to bring my abuse of process claim against him, I demanded Leaf first admit liability for committing abuse of process against me by responding to a Second Request for Admissions before I would dismiss any claims.

47. Because James Driscoll had a pending motion asserting I was a required party under Rule 19, at the time, the terms of our agreement did not prevent me from filing into the Nantucket Litigation in my capacity as a defendant. See Exhibit 6. Therefore, we agreed the Joint Stipulation of Dismissal would specifically reference only Leaf and Michael Driscoll's capacities regarding "Michael Driscoll's **Counterclaims**."

48. Since the terms of our Settlement Agreement required me to dismiss my then-existing claims in exchange for Leaf consenting to me bringing my proposed claims later, I insisted the phrase "with prejudice **against refiling**" the dismissed counterclaims be used, instead of just "with prejudice" to remove any ambiguity that the scope of our stipulation of dismissal was only to the claims enumerated in my then-existing complaint, to make clear there would be no res judicata effect on any claims not previously pled.

49. Leaf's Counsel represented to me, at all relevant times, that he had the authority to settle the claims according to these terms.

50. After we agreed to these terms orally, I drafted, signed, and filed the stipulation of dismissal.

51. When I later sought to recover my costs in the Nantucket Action, the clerk refused to let me file into the case. See Exhibit 3.

52. I then filed an action to recover my costs under G.L. 231 §6F in Plymouth Superior after the Nantucket Superior Court refused to let me file in the existing docket. See Exhibit 4.

53. When Leaf argued the joint stipulation of dismissal barred my right to recover statutory costs that I incurred defending his suit against me, I amended to add fraud on the court and a declaration defining the terms of the settlement agreement to allow me to recover under 231 §6F.

54. When announcing my intent to amend, Leaf's Counsel affirmed our settlement agreement by insisting I could not yet bring my abuse of process claim against him because the Nantucket Action had not yet resolved, and I reluctantly agreed to hold off until that case concluded before filing any substantive claims.

55. As I have repeatedly explained to Leaf's prior and new counsel, my claims in the Plymouth Litigation are only to recover my court costs under G.L. 231 §6F. That is why my initial complaint contains only that claim, and my amendment seeks to vacate the stipulation of dismissal for fraud on the court, which amendment I made when Leaf argued that stipulation prevented my recovering statutory court costs.

56. There is no term in our settlement agreement limiting which court I can bring my delayed claims in.

57. Exhibit 1 attached hereto is a true and accurate copy of the original Answer with Counterclaims I filed in response to Leaf suing me. I retrieved this document personally from the Massachusetts online docket.

58. Exhibit 2 attached hereto are true and accurate copies of emails I am a party to and their attachments that I personally retrieved from my Yahoo! Email online.

59. Exhibit 3 attached hereto is a true and accurate copies of an email I received from the Mass. Superior Court E-filing system when I attempted to file a post-judgement motion to recover my court costs incurred defending against Leaf's claims against me. I personally retrieved this document from my Yahoo! Email.

60. Exhibit 4 attached hereto is a true and accurate copies of the original complaint I filed against Leaf in Plymouth seeking relief only pursuant to G.L. 231 §6F which I personally retrieved from the Massachusetts online docket.

61. Exhibit 5 attached hereto is a true and accurate copy of the road maintenance agreement which was sent to me in 2021 before Leaf sued me. I personally retrieved this document from my Yahoo! Email online.

62. Exhibit 6 attached hereto is a true and accurate copy of a Motion I retrieved from the Massachusetts online court docket, which James Driscoll filed in the Nantucket Litigation.

63. Exhibit 7 attached hereto is a true and accurate copy of a Court Order I retrieved from the Massachusetts online court docket, filed in the Nantucket Litigation.

64. Exhibit 8 attached hereto is a true and accurate copy of a Transcript that was emailed to me by a certified court reporter and transcribes a motion hearing in the Nantucket Litigation that I personally attended.

I swear under the penalties of perjury that the foregoing facts are true to the best of my knowledge.

SIGNED this 28th day of July, 2024,

_____
Michael Driscoll